IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PETER A. LEWIS, #A82902,        ) | |
|                                 ) | |
|         Plaintiff,              ) | |
|                                 ) | |
| vs.                             ) | Case No. 14-cv-01154-SMY |
|                                 ) | |
| WARDEN RANDY GROUNDS,           ) | |
|                                 ) | |
|         Defendant.              ) | |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Peter A. Lewis, an inmate who is currently incarcerated at Robinson Correctional Center ("Robinson"), brings this *pro se* action seeking injunctive relief. To initiate this suit, Plaintiff filed a "Motion for Emergency Temporary Restraining Order and Preliminary Injunction" pursuant to Federal Rule of Civil Procedure 65 (Doc. 1). In it, he claims that an individual grooming policy at Robinson requires him to cut his religious "hairlocks," which Plaintiff's religion strictly forbids. The policy, as applied to him, violates the Free Exercise Clause of the First Amendment, the prohibition against Cruel and Unusual Punishment under the Eighth Amendment, the Equal Protection Clause of the Fourteenth Amendment, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq*. Based on the allegations, the Court construes the motion as a complaint filed pursuant to 42 U.S.C. § 1983 for the deprivation of Plaintiff's constitutional rights by persons acting under color of state law.[1] As such, the complaint is subject to preliminary review under 28 U.S.C. § 1915A.

---

[1] Accordingly, the "Motion for Emergency Temporary Restraining Order and Preliminary Injunction" is hereinafter referred to as "the complaint."

**Merits Review Under 28 U.S.C. § 1915A**

According to Section 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims.  28 U.S.C. § 1915A(a).  The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief.  28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The claim of entitlement to relief must cross "the line between possibility and plausibility."  *Id*. at 557.  Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although the Court is obligated to accept factual allegations as true, some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim.  *Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011); *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).  Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements."  *Id*.  At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed.  *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).  After carefully considering the allegations, the Court concludes that the complaint survives preliminary review under Section 1915A.

## **The Complaint**

Plaintiff's claims arise from an individual grooming policy that Warden Grounds posted at Robinson in Housing Unit 5 on October 3, 2014 (Doc. 1, pp. 2, 20). According to the warden's bulletin, prison officials are authorized to enforce the grooming policy against "any offender whose hairstyle . . . present[s] a security risk" (Doc. 1, p. 2). A security risk is posed where: (1) "the hairstyle impedes or prevents staff from conducting a thorough search of the hair for contraband;" (2) "contraband hidden in the hair may not be detected;" (3) "contraband hidden in the hair may injure staff attempting to search the hair;" or (4) "[t]he hairstyle signifies a security threat group affiliation" (Doc. 1, p. 3). Plaintiff claims that this policy unlawfully targets inmates who wear dreadlocks, including him.

Plaintiff is a member of a religious sect known as the Hebrew Israelites. He was "born into" this sect and is therefore subject to the Nazarite vow (Doc. 1, p. 4). This vow forbids him from cutting his "hairlocks" (Doc. 1, pp. 4-5). Plaintiff claims that the practice of wearing hairlocks is deeply rooted in his religious beliefs (Doc. 1, p. 8). Plaintiff believes that cutting his hairlocks "will weaken and interrupt the spiritual growth [and] the personal relationship with the Creator" (Doc. 1, pp. 6, 19). As of the date he commenced this action, Plaintiff's hairlocks were still intact (Doc. 2, p. 13). However, on October 18, 2014, Major Erickson (Badge No. 796) and Lieutenant Frapp (Badge No. 10853) met with Plaintiff (Doc. 1, p. 20). They advised him of the policy and gave him the option of either cutting his hair or "tak[ing] down" his religious hairlocks.

Plaintiff compares this incident to one he experienced in 2003 (Doc. 1, p. 10). He filed a lawsuit against prison officials for similar reasons. The case ultimately settled, after the parties entered into a written agreement in which IDOC officials agreed not to cut Plaintiff's religious

hairlocks. Not long after settling the lawsuit, however, the officials allegedly reneged on their agreement and cut Plaintiff's hair (Doc. 1, p. 11). This caused Plaintiff to suffer humiliation and severe depression. His weight plummeted from 175 pounds down to only 98 pounds. His hairlocks have since grown back naturally (Doc. 1, p. 12). However, Plaintiff expresses concern that cutting his religious hairlocks could trigger another similar depressive episode.

Plaintiff has named Robinson's warden, Randy Grounds, as the only defendant in this action. He asserts claims against Defendant Grounds under the Free Exercise Clause of the First Amendment, the Cruel and Unusual Punishment Clause of the Eighth Amendment, the Equal Protection Clause of the Fourteenth Amendment, and RLUIPA (Doc. 1, pp. 9, 12). Plaintiff seeks injunctive relief, in the form of a temporary restraining order or a preliminary injunction prohibiting prison officials from cutting his religious hairlocks before he is released from prison on October 28, 2015 (Doc. 1, p. 12).

## Discussion

**Count 1 – Free Exercise Claim**

After carefully considering the allegations, the Court finds that Plaintiff has articulated a colorable claim against Defendant Grounds under the Free Exercise Clause of the First Amendment (**Count 1**). It is well established that "a prisoner is entitled to practice his religion insofar as doing so does not unduly burden the administration of the prison." *Hunafa v. Murphy,* 907 F.2d 46, 47 (7th Cir. 1990); *see Al-Alamin v. Gramley,* 926 F.2d 680, 686 and nn. 3-5 (7th Cir. 1991) (collecting cases). A prison regulation that impinges on an inmate's First Amendment rights is nevertheless valid "if it is reasonably related to legitimate penological interests." *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 349 (1987) (quoting *Turner v. Safley,* 482 U.S. 78, 89 (1987)). Such interests include inmate security and

the proper allocation of limited prison resources. *See id.* at 348, 352-53; *Turner,* 482 U.S. at 90; *Al-Alamin,* 926 F.2d at 686.

Relative to the constitutional implications of the individual grooming policy, the Seventh Circuit has upheld the IDOC policy regarding dreadlocks under the factual scenario presented in *Grayson v. Schuler,* 666 F.3d 450, 452 (7th Cir. 2012) ("The case law indicates that a ban on long hair, including dreadlocks, even when motivated by sincere religious belief, would pass constitutional muster.") (citations omitted). *See Blakemore v. Godinez*, 2013 WL 6096548 (S.D. Ill. 2013). However, the appellate court also recognized that the ruling may conflict with *O'Lone v. Shabazz,* 482 U.S. 342, 348–50 (1987), requiring prison authorities to "accommodate" an inmate's religious preferences, if consistent with security and other legitimate penological concerns. *Grayson,* 666 F.3d at 452–53. In *Lewis v. Stearnes,* 712 F.3d 1083, 1085 (7th Cir. 2013), the appellate court observed that *O'Lone* still stands. Given these opinions, the Court cannot conclude at this early stage that the complaint fails to state a First Amendment claim. Accordingly, Plaintiff shall be allowed to proceed with **Count 1** against Defendant Grounds, based on his request for injunctive relief.

**Count 2 – RLUIPA Claim**

The complaint also states a colorable claim against Defendant Grounds under RLUIPA (**Count 2**). RLUIPA applies to state and local governments and to those acting under color of state law. *See* 42 U.S.C. § 2000cc-5(4). It confers greater religious rights on prisoners than the Free Exercise Clause has been interpreted to confer. *See* 42 U.S.C. § 2000cc-1; *Cutter v. Wilkinson*, 544 U.S. 709, 714-17 (2005). RLUIPA prohibits prisons receiving federal funds from imposing a substantial burden on an inmate's religious exercise unless that burden: (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means

of furthering that compelling governmental interest." 42 U.S.C. § 2000cc–1(a)(1)–(2). However, "[u]nlike cases arising under the Free Exercise Clause of the First Amendment, this prohibition applies even where the burden on the prisoner 'results from a rule of general applicability.'" *Koger v. Bryan,* 523 F.3d 789, 796 (7th Cir. 2008) (quoting 42 U.S.C. § 2000cc–1 (a)).

Because sovereign immunity shields state officials from monetary damages in their official capacity, and RLUIPA does not allow for money damages against prison officials in their individual capacity, injunctive relief is the only possible remedy RLUIPA affords. *Grayson,* 666 F.3d at 451; *Nelson v. Miller,* 570 F.3d 868, 886–89 (7th Cir. 2009). This is exactly the relief that Plaintiff seeks. Further, the proper parties in a claim for injunctive relief include the supervisory government officials who would be responsible for ensuring injunctive relief is carried out. *Gonzalez v. Feinerman,* 663 F.3d 311, 315 (7th Cir. 2011). Plaintiff names the warden. Accordingly, Plaintiff shall be allowed to proceed with **Count 2** against Defendant Grounds, based on his request for injunctive relief.

**Count 3 – Eighth Amendment Claim**

Plaintiff has failed to articulate an Eighth Amendment "cruel and unusual punishment" claim (**Count 3**) against Defendant Grounds. The complaint does not define the contours of this claim with sufficient specificity. From the allegations, it is altogether unclear whether Plaintiff is attempting to assert a deliberate indifference to medical needs claim or an excessive force claim, in conjunction with the anticipated shearing of his hairlocks. Either way, he is required to include sufficient allegations in the complaint to address the claim. The Court is not required to guess what Plaintiff intended, and it will not do so here. Accordingly, **Count 3** shall be dismissed without prejudice for failure to state a claim upon which relief can be granted.

**Count 4 – Equal Protection Claim**

Finally, the Fourteenth Amendment (**Count 4**) is mentioned in the complaint, although not as an independent basis of liability. Even if Plaintiff intended to assert a claim under the Equal Protection Clause based on his allegation that inmates with dreadlocks are unfairly targeted by the grooming policy, the claim would be subject to dismissal. Such a claim duplicates the First Amendment claim. The Court analyzes similar claims under the most "explicit source[s] of constitutional protection." *Graham v. Connor,* 490 U.S. 386, 395 (1989). Accordingly, Fourteenth Amendment equal protection claims that are essentially duplicative of First Amendment free exercise claims are routinely dismissed. *See Conyers v. Abitz,* 416 F.3d 580, 586 (7th Cir. 2005) (dismissing equal protection and Eighth Amendment claims based on same circumstances as a free exercise claim because the free exercise claim "gains nothing by attracting additional constitutional labels"). **Count 4** shall be dismissed without prejudice.

## Request for Injunctive Relief

Plaintiff seeks an injunction prohibiting prison officials from cutting his religious hairlocks prior to his release from prison. In order to obtain preliminary injunctive relief, whether through a temporary restraining order or a preliminary injunction, Plaintiff must demonstrate that: (1) his underlying case has some likelihood of success on the merits; (2) no adequate remedy at law exists, and; (3) Plaintiff will suffer irreparable harm without the injunction. *Woods v. Buss*, 496 F.3d 620, 622 (7th Cir. 2007). If those three factors are shown, the district court must then balance the harm to each party and to the public interest from granting or denying the injunction. *Id.*; *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013); *Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999). Upon preliminary review, the Court finds that Plaintiff's claims deserve further consideration.

Under the circumstances, Plaintiff's request for relief shall be **REFERRED** pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c) to United States Magistrate Judge **Philip M. Frazier**, who shall resolve the request for injunctive relief as soon as practicable and issue a report and recommendation. Any motions filed after the date of this Order that relate to the request for injunctive relief or seek leave to amend the complaint are also hereby **REFERRED** to Judge Frazier. Further, Plaintiff is **ORDERED** to advise the Court in writing, immediately, if his religious hairlocks have already been or are sheared at any point while this action is pending.

### Failure to Pay Filing Fee or File for IFP

At the time of filing this action, Plaintiff did not pay a filing fee or file a motion for leave to proceed *in forma pauperis* ("IFP Motion"). On October 24, 2014, the Clerk of Court issued a letter to Plaintiff, advising him that he must pay the full filing fee of $400.00 or file a Motion and Affidavit to Proceed in District Court Without Prepaying Fees or Costs ("IFP Motion") within thirty (30) days (i.e., before November 24, 2014). Plaintiff was warned that failure to do so could result in dismissal of this case. Included with this letter was a form IFP Motion. Plaintiff is hereby **ORDERED** to provide the Court with a filing fee of $400.00 or a completed IFP Motion on or before **November 24, 2014**. Failure to comply with this Order may **result in dismissal** of this action for want of prosecution under Federal Rule of Civil Procedure 41(b).

### Disposition

**IT IS HEREBY ORDERED** that **COUNTS 3** and **4** are **DISMISSED** without prejudice for failure to state a claim upon which relief can be granted.

**IT IS FURTHER ORDERED** that, as to **COUNTS 1** and **2**, the United States Marshal Service is **APPOINTED** pursuant to Federal Rule of Civil Procedure Rule 4(e) to complete

service on an expedited basis **within 14 days of the date of this Order.** The Clerk of Court is directed to complete, on Plaintiff's behalf, a summons and form USM-285 for service of process on Defendant **GROUNDS**. The Clerk shall issue the completed summons, and prepare a service packet for Defendant Grounds consisting of: the completed summons, the completed form USM-285, a copy of the "Motion for Emergency Temporary Restraining Order and Preliminary Injunction" (Doc. 1), the supporting memorandum (Doc. 2), and this Memorandum and Order. The Clerk shall deliver the service packets for Defendant Grounds to the United States Marshal Service for personal service on Defendant Grounds.

Pursuant to Federal Rule of Civil Procedure 4, **before noon on November 12, 2014,** the United States Marshals Service **SHALL personally serve** upon Defendant **GROUNDS** the service packet containing the summons, form USM-285, a copy of the "Motion for Emergency Temporary Restraining Order and Preliminary Injunction" (Doc. 1), the supporting memorandum (Doc. 2), and this Memorandum and Order. All costs of service shall be advanced by the United States, and the Clerk shall provide all necessary materials and copies to the United States Marshals Service. The Court will not require Defendant Grounds to pay the full costs of formal service, as the Court is ordering personal service to expedite the resolution of Plaintiff's motion for injunctive relief.

Plaintiff shall serve upon Defendant Grounds (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendant or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Philip M. Frazier** for further pre-trial proceedings, including a decision on Plaintiff's request for injunctive relief (Doc. 1). Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Frazier for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether an application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: October 28, 2014**

**s/ STACI M. YANDLE**
**U.S. District Judge**